# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: TRIANGLE USA PETROLEUM CORPORATION, *et al.* <br><br> Debtors. | Chapter 11 <br><br> Bk. Case No. 16-11566 (MFW) |
| CALIBER MEASUREMENT SERVICES, LLC, *et al.* <br><br><br> Appellants, <br> v. <br><br> TRIANGLE USA PETROLEUM CORPORATION, *et al.* <br><br><br> Appellees, | <br><br><br><br><br> C.A. No. 17-288 (GMS) |

## BRIEF OF APPELLANTS CALIBER MEASUREMENT SERVICES LLC, CALIBER MIDSTREAM FRESH WATER PARTNERS LLC, AND CALIBER NORTH DAKOTA LLC IN SUPPORT OF APPEAL

Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
Daniel B. Butz (No. 4227)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, Delaware 19801
T: (302) 658-9200
rdehney@mnat.com
cmiller@mnat.com
dbutz@mnat.com

Alfredo R. Pérez
Christopher M. Lopez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1700
Houston, Texas 77002
T: (713) 546-5000
alfredo.perez@weil.com
chris.lopez@weil.com

*Counsel for Appellants Caliber Measurement Services LLC,*
*Caliber Midstream Fresh Water Partners LLC, and Caliber North Dakota LLC*

Dated: July 14, 2017

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012, Caliber Measurement Services LLC, Caliber Midstream Fresh Water Partners LLC, and Caliber North Dakota LLC (collectively, the "**Appellants**") make the following disclosure:

1.     For nongovernmental corporate parties, please list all parent corporations:

- *For Caliber Measurement Services LLC*: Caliber Midstream Partners, L.P.

- *For Caliber Midstream Fresh Water Partners LLC*: Caliber Midstream Partners, L.P.

- *For Caliber North Dakota LLC*:  Caliber Midstream Partners, L.P.

2.   For nongovernmental corporate parties, please list all publicly held corporations that hold 10% or more of the party's stock:

- *For Caliber Measurement Services LLC*:  N/A

- *For Caliber Midstream Fresh Water Partners LLC*:  N/A

- *For Caliber North Dakota LLC*:  N/A

# **TABLE OF CONTENTS**

Page

JURISDICTIONAL STATEMENT ..........................................................................1

STATEMENT OF ISSUES PRESENTED...............................................................2

STATEMENT OF THE CASE...................................................................................3

I.      The Parties ....................................................................................................4

II.     The Debtors' Chapter 11 Case and Formulation of the Amended Plan..........5

III.    Material Sections of the Plan Concerning Caliber ..........................................6

IV.    The Confirmation Order .................................................................................9

SUMMARY OF ARGUMENT ...............................................................................10

ARGUMENT ..........................................................................................................11

The Bankruptcy Court Erred in Confirming the Plan including a Toggle
      Provision that Does Not Comport with the Bankruptcy Code and
      Eviscerates Statutory Rights Afforded to Caliber ..........................................11

      A.     The Toggle Provision Is Contrary to Sections 365 and 1123(b)(3) of
             the Bankruptcy Code..........................................................................11

      B.     The Toggle Provision Makes for Bad Bankruptcy Policy .................19

CONCLUSION ........................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alberts v. Humana Health Plan, Inc. (Greater Se. Cmty. Hosp. Corp. I)*,
    327 B.R. 26 (Bankr. D.D.C. 2005) ...............................................................16, 17

*In re Dehon, Inc.*,
    352 B.R. 546 (Bankr. D. Mass. 2006) .................................................................20

*Diamond Z Trailer, Inc., v. JZ L.L.C. (In re JZ L.L.C.)*,
    371 B.R. 412 (9th Cir. 2007) .............................................................................13

*In re Exide Techs.*,
    303 B.R. 48 (Bankr. D. Del. 2003) ....................................................................11

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*,
    554 U.S. 33 (2008) ............................................................................................12

*In re Gunter Hotel Assocs.*,
    96 B.R. 696 (Bankr. W.D. Tex. 1988)........................................................16, 17, 18

*In re Lernout & Hauspie Speech Prods., N.V.*,
    301 B.R. 651 (Bankr. D. Del. 2003) ...................................................................11

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (1984)......................................................................................12, 13

*In re Polysat, Inc.*,
    152 B.R. 886 (Bankr. E.D. Pa. 1993) .................................................................13

*In re Simplot*,
    2007 WL 2479664, No. 06-00002 (Bankr. D. Idaho Aug. 28, 2007),
    *aff'd*, *DJS Props., L.P. v. Simplot*, 397 B.R. 493 (D. Idaho 2008)................15, 6

*In re Thinking Machs. Corp.*,
    67 F.3d 1021 ......................................................................................................20

*Univ. Med. Ctr. v. Sullivan*,
    125 B.R. 121 (E.D. Pa. 1991) ...........................................................................12

ii

**Statutes**

11 U.S.C. § 365 ................................................................................*passim*

11 U.S.C. § 1123 ..............................................................................*passim*

11 U.S.C. § 1129(a)(l) ......................................................................*passim*

28 U.S.C. §§ 157 and 1334 ...........................................................................1

28 U.S.C. § 158(a) .........................................................................................1

**Other Authorities**

Fed. R. Bankr. P. 9006 ...............................................................................17

H. Rep. No. 595, 95th Cong., 1st Sess. 348 (1977) ...................................13

S. Rep. No. 989, 95th Cong., 2d Sess. 59 (1978) ......................................13

## **<u>JURISDICTIONAL STATEMENT</u>**

The United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") had jurisdiction over the underlying matter pursuant to 28 U.S.C. §§ 157 and 1334.   The basis for this Court's jurisdiction is 28 U.S.C. § 158(a).   The order appealed from was entered on March 10, 2017.   *See* D.I. 38 (Bankr. No. 16-11566).   On March 20, 2017, the Appellants filed a timely notice of appeal.   D.E. 1 (C.A. No. 17-00288).   The order appealed from is a final order of the Bankruptcy Court.   *See* D.I. 38.

1

## STATEMENT OF ISSUE PRESENTED

Did the Bankruptcy Court err in confirming the Plan over Caliber's objection with respect to the treatment of the Specified Caliber Contracts, including, *inter alia*, under Section 6.03 of the Plan, which gives the Debtors the option to assume or reject the Specified Caliber Contracts after entry of the Confirmation Order for an indeterminate period of time that will extend through the occurrence of contingencies that are without a determinable time limit, and improperly allows certain unsecured creditors in the same Plan class as Caliber (and who now control the reorganized Debtors) to ultimately determine the fate of Caliber under the Plan?   This is a question of law subject to *de novo* review.

WEIL:\96192392\9\32813.0003

# STATEMENT OF THE CASE[1]

This appeal arises out of the Bankruptcy Court's error in confirming a chapter 11 plan of reorganization that eviscerates statutory protections afforded to Caliber under sections 1123(b)(2) and 365 of the Bankruptcy Code by allowing the Debtors to have an indefinite post-confirmation extension of time to assume or reject the Specified Caliber Contracts through an unprecedented and impermissible "toggle" provision in the Plan.  The toggle provision contravenes a fundamental protection and certainty afforded under the Bankruptcy Code to executory contract counterparties like Caliber by forcing it to bear, among other things, the risk that Caliber's customers, potential lenders, and potential equity investors will not want to conduct business with, or invest in, a company whose primary source of revenue – the Specified Caliber Contracts – could be rejected at an unknown date in the future.  The harm to Caliber is real, as approximately 80% of its revenue is derived from the Specified Caliber Contracts.  At the same time, the toggle provision allows the Debtors to strategically elect to assume Caliber's contracts based entirely on future market conditions or the wishes of former unsecured creditors who now effectively control the Debtors by simply electing to not litigate against Caliber. If the Bankruptcy Court's error is not rectified, future debtors will inevitably begin including toggle-like provisions in their plans of reorganization,

---

[1]      All capitalized terms are defined within the Statement of the Case.

WEIL:\96192392\9\32813.0003

giving themselves the freedom to act while tying up their contractual counterparties for indefinite periods of time. That result runs counter to the requirements of the Bankruptcy Code.

## I. The Parties

Caliber North Dakota LLC, Caliber Measurement Services LLC, and Caliber Midstream Fresh Water Partners LLC (collectively, "**Caliber**") is an independent energy infrastructure company providing midstream services to oil and gas producers in the Bakken and Three Forks shale oil plays in North Dakota. Caliber and Debtor Triangle USA Petroleum Corporation ("**TUSA**") are parties to various midstream services agreements that support the overwhelming majority of TUSA's oil and natural gas production in North Dakota. As of the Debtors' bankruptcy petition date, Caliber held prepetition claims totaling approximately $9.8 million in the aggregate, making it TUSA's second largest unsecured creditor.

Prior to the commencement of the Debtors' chapter 11 cases, TUSA and Caliber representatives began discussions about a potential financial restructuring of TUSA and its non-debtor parent Triangle Petroleum Corporation ("**TPC**"). Before long, however, the Debtors told Caliber representatives that rather than working on a mutually beneficial long-term agreement, they intended to file chapter 11 cases, seek to reject the Caliber contracts, and litigate whether dedications in certain midstream services agreements between Caliber and TUSA

contain enforceable covenants running with the land under North Dakota law. This was a clear effort to gain leverage over Caliber. In response, Caliber was forced to file a prepetition civil action in North Dakota on May 27, 2016 (the "**North Dakota Action**") seeking a declaratory judgment that the dedications are, in fact, enforceable covenants that run with the land.

## II.     The Debtors' Chapter 11 Case and Formulation of the Amended Plan

Following the commencement of the North Dakota Action, the Debtors commenced chapter 11 cases on June 29, 2016 by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

On July 5, 2016, the Debtors filed a motion for authority to reject certain Caliber midstream contracts (the "**Specified Caliber Contracts**") [D.I. 2] ("**Motion to Reject**"). The Debtors also initiated a related adversary proceeding seeking a declaratory judgment that the dedications in the Specified Caliber Contracts did not contain enforceable covenants running with the land under North Dakota law. The Debtors never pursued or scheduled a hearing on the Motion to Reject at any time prior to confirmation of the Plan.

On August 29, 2016, Caliber filed (i) a motion to dismiss TUSA's Complaint for Declaratory Judgment or, in the alternative, transfer the TUSA Adversary Proceeding to the North Dakota federal court for improper venue, or based on abstention, or, in the alternative, for abstention and stay of the TUSA

5

Adversary Proceeding. [Adv. D.I. 1]   Caliber also filed a motion to lift the automatic stay to permit the prepetition North Dakota Action to proceed in the proper venue, North Dakota.  [D.I. 6]  The Bankruptcy Court agreed with Caliber and, on November 23, 2016, granted Caliber's motion to lift the automatic stay [D.I. 10] and dismissed TUSA's adversary proceeding with prejudice [Adv. D.I. 5], finding that the issues raised under North Dakota law should properly be decided in North Dakota.

On November 15, 2016, the Debtors filed a Joint Chapter 11 Plan of Reorganization of Triangle USA Petroleum Corporation and its Affiliated Debtors and a Disclosure Statement with Respect to the Joint Chapter 11 Plan of Reorganization of Triangle USA Petroleum Corporation and Its Affiliated Debtors. The Plan and Disclosure Statement were amended on January 12, 2017 and March 8, 2016 [D.I. 27] (as amended, the "**Plan**" and the "**Disclosure Statement**").

## III.   Material Sections of the Plan Concerning Caliber

Section 6.03 of the Plan provides that the Specified Caliber Contracts shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, subject to satisfaction of each of the following conditions subsequent: (i) the entry of a Final Order or judgment in the North Dakota Action determining that the Specified Caliber Contracts do not constitute or contain a covenant running with the land, and (ii) the entry of a Final

6

Order or judgment determining the Allowed amount of the Caliber Rejection Damages Claim, or estimating the maximum amount thereof, in an amount less than or equal to the Caliber Rejection Damages Cap (which the Plan set at $75 million).   [D.I. 27, § 6.03(b).]   To the extent a court of competent jurisdiction issues a Final Order or judgment resulting in the failure of one or both of the conditions under Section 6.03(b), the Plan provides that the Specified Caliber Contracts shall be automatically deemed assumed (Section 6.03 collectively, the "**Toggle Provision**").  *Id.* at § 6.03(c).

Specifically, Section 6.03(b) states:

> The Specified Caliber Contracts shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, subject only to the satisfaction of each of the following conditions subsequent: (i) the entry of a Final Order in the Caliber Declaratory Judgment Action determining that the Specified Caliber Contracts do not constitute or contain a covenant running with the land; and (ii) the entry of a Final Order determining the Allowed amount of the Caliber Rejection Damages Claim, or estimating the maximum amount thereof, in an amount less than or equal to the Caliber Rejection Damages Cap.  No later than 10 days after entry of a Final Order resulting in the satisfaction of the conditions set forth in the foregoing clauses (i) and (ii) of this Section 6.03(b), the Debtors shall transmit to Caliber a notice indicating that the Specified Caliber Contracts were conclusively rejected as of the date such conditions were satisfied. At any time from and after the Confirmation Date, Caliber may stipulate, by irrevocable written notice to the Debtors or the Reorganized Debtors, as applicable, that the conditions subsequent specified in clauses (i) and (ii) of

7

this Section 6.03(b) are deemed satisfied, in which case (A) the Specified Caliber Contracts shall be deemed conclusively rejected as of the date Caliber so stipulates and (B) the Caliber Rejection Damages Claim shall be Allowed in an amount to be determined by the Bankruptcy Court not to exceed the Caliber Rejection Damages Cap.

Section 6.03(c) states:

To the extent the Bankruptcy Court or another court of competent jurisdiction issues a Final Order resulting in the failure of one or both of the conditions set forth in clauses (i) and (ii) of Section 6.03(b), the Specified Caliber Contracts shall automatically be deemed assumed. No later than 10 days after entry of a Final Order resulting in the failure of one or both of the conditions set forth in clauses (i) and (ii) of Section 6.03(b), the Debtors shall transmit to Caliber a notice (A) setting forth the proposed Cure with respect to the Specified Caliber Contracts and (B) indicating that the Specified Caliber Contracts will be deemed assumed, subject to (1) the resolution of any dispute with respect to Cure and the payment thereof and (2) the resolution of any dispute concerning adequate assurance of future performance, in each case pursuant to the procedures set forth in Section 6.01(d), (f), and (g). The Specified Caliber Contracts shall be deemed assumed as of the date the matters set forth in clauses (1) and (2) of the preceding sentence are resolved by agreement of the parties or a Final Order of the Bankruptcy Court, and the provisions of Section 6.03(d) shall govern the Specified Caliber Contracts until such date. For the avoidance of doubt, the payment of any Cure in connection with the assumption of the Specified Caliber Contracts pursuant to this Section 6.03(c) shall not be subject to the prior consent of the Required Participating Noteholders, notwithstanding anything in Section 6.01(e) to the contrary.

WEIL:\96192392\9\32813.0003

The Debtors readily conceded that that the Plan was feasible even if the Specified Caliber Contracts were assumed, but nonetheless sought confirmation of the Plan with the Toggle Provision.  *See* D.I. 15, Second Amended Disclosure Statement at 84 (stating that "the Debtors believe the Plan would be feasible even if the Specified Caliber Contracts were assumed (as the Financial Projections illustrate)").  As of the date of this Appeal, Caliber and the Debtors have not even had their first scheduling conference with the North Dakota Court

## IV.   The Confirmation Order

On March 10, 2017, the Bankruptcy Court entered an Order confirming the Debtors' Plan [D.I. 38] ("**Confirmation Order**").  The Confirmation Order approved Section 6.03 of the Plan, allowing the Debtors to postpone the decision of whether to reject or assume the Specified Caliber Contracts for an indefinite amount of time while the parties' litigate the North Dakota Action.  *Id.* at 37-38.

On the Effective Date of the Plan, a group of unsecured ad hoc noteholders (the "**Ad Hoc Noteholders**") with whom the Debtors negotiated the Plan (and who were classified in the same Plan Class as Caliber), were permitted to participate in a rights offering and received equity in satisfaction of their allowed claims.  The Ad Hoc Noteholders, who now own a majority of the Debtors' stock, appointed members of the Debtors' board of directors, and now effectively control the Debtors.

9

## SUMMARY OF ARGUMENT

The Bankruptcy Court erred by confirming the Plan, which violates section 365 of the Bankruptcy Code by indefinitely extending the Debtors' ability to assume or reject the Specified Caliber Contracts post-confirmation. Section 1123(b)(2) of the Bankruptcy Code states that a chapter 11 plan of reorganization may, ***subject to section 365 of Bankruptcy Code***, provide for the assumption or rejection of an executory contract. In turn, section 365(d)(2) of the Bankruptcy Code requires that a debtor elect to assume or reject an executory contract prior to plan confirmation. The Plan does not satisfy the requirements of section 365 with respect to the Specified Caliber Contracts. Instead, the Plan allows the Debtors, in their sole discretion, to defer a final decision with respect to the Specified Caliber Contracts to a later unknown date depending on uncertain, undetermined, and contrived contingencies, in violation of the Bankruptcy Code. Accordingly, it was error for the Bankruptcy Court to confirm the Plan.

## ARGUMENT

**The Bankruptcy Court Erred in Confirming the Plan including a
Toggle Provision that Does Not Comport with the Bankruptcy Code and
Eviscerates Statutory Rights Afforded to Caliber**

### A.   *The Toggle Provision Is Contrary to Sections 365 and 1123(b)(3) of the Bankruptcy Code*

The Toggle Provision turns the Bankruptcy Code from a shield for the Debtors into a sword wielded against Caliber, aimed at achieving a settlement on the Debtors' terms. The Plan containing the Toggle Provision – which was confirmed over Caliber's objection – does not comply with applicable provisions of the Bankruptcy Code, as required by Bankruptcy Code section 1129(a)(1), and contravenes sound bankruptcy policy. Accordingly, the Confirmation Order should be vacated, and the Bankruptcy Court should be instructed to enter an order modifying the Confirmation Order and Plan to eliminate the Toggle Provision and specifying that the Specified Caliber Contracts are unaffected by the Debtors' Plan.

The Debtors have the burden of establishing that each of the requirements for plan confirmation under section 1129 of the Bankruptcy Code has been satisfied. *See In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 656 (Bankr. D. Del. 2003). Section 1129(a)(1), in turn, requires that a plan of reorganization comply with all applicable provisions of title 11 of the Bankruptcy Code, including sections 365 and 1123 of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(l).

11

Section 365(d)(2) of the Bankruptcy Code provides that a debtor may assume or reject an executory contract "*at any time before confirmation of a plan*." 11 U.S.C. § 365(d)(2) (emphasis added).  Under section 1123(b)(2), a debtor may also assume or reject an executory contract pursuant to a chapter 11 plan.  *Id.* at § 1123(b)(2).  When a debtor relies on section 1123 to assume or reject an executory contract, it still must comply with section 365.  *See id.* (providing that a chapter 11 plan "may . . . *subject to section 365* . . . provide for the assumption, rejection, or assignment of any executory contract") (emphasis added).  Courts have interpreted section 365 as precluding a debtor from deferring its decision to assume or reject an executory contract beyond confirmation.  *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 529 (1984) ("In a Chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract, although a creditor may request the Bankruptcy Court to make such a determination within a particular time."); *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.,* 554 U.S. 33, 46 (2008) ("We agree with *Bildisco*'s commonsense observation that the *decision* whether to reject a contract or lease must be made before confirmation."); *Univ. Med. Ctr. v. Sullivan,* 125 B.R. 121, 124 (E.D. Pa. 1991) ("A debtor under Chapter 11 must elect to assume or reject any executory contract by the time a reorganization plan is confirmed, or, upon motion by the creditor, at an earlier time specified by the court.").

WEIL:\96192392\9\32813.0003

If an executory contract is neither accepted nor rejected, it will "ride through" the bankruptcy case. *Bildisco*, 465 U.S. at 546 n.12 (citations omitted); *see also Diamond Z Trailer, Inc., v. JZ L.L.C. (In re JZ L.L.C.)*, 371 B.R. 412, 423 (9th Cir. 2007); *In re Polysat, Inc.*, 152 B.R. 886, 890 (Bankr. E.D. Pa. 1993) (stating that an "executory contract that is neither rejected nor assumed passes through the bankruptcy to the reorganized debtor").  Accordingly, the Bankruptcy Code provides chapter 11 debtors with only the following options: (i) assume an executory contract prior to confirmation or in the plan; (ii) reject an executory contract prior to confirmation or in the plan; or (iii) take no action and the executory contract rides through the bankruptcy.

The legislative history of the Bankruptcy Code makes clear why debtors are not permitted to defer the assumption or rejection decision.  Section 365 was designed "to prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate." *See* H. Rep. No. 595, 95th Cong., 1st Sess. 348 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 59 (1978).  Whatever benefits debtors may derive from the protections of the Bankruptcy Code are not to be used to work an injustice on their creditors, leaving them in the lurch, uncertain of their rights.  But that is precisely what happens to Caliber under the Plan.

13

The Toggle Provision sanctioned by the Bankruptcy Court affords the Debtors an unprecedented fourth option that is devoid of express support in the Bankruptcy Code or the policy underpinning section 365 of the Bankruptcy Code. Indeed, an unlimited post-effective date extension of the time to assume or reject the Specified Caliber Contracts, while Caliber bears all of the uncertainty until conditions subsequent in the Plan are either satisfied or fail, has never been approved in another bankruptcy case in this District or, to Caliber's knowledge, any other District. *See* D.I. 39, Confirmation Hr. Tr. 111:20-22 (Judge Walrath stating: "Caliber is right. They [the Debtors] are asking for something that has never been done before.")

During the confirmation hearing, the Debtors claimed that they were not delaying the assumption/rejection decision post-confirmation; but that they decided pre-confirmation to reject the Specified Caliber Contracts, subject to two conditions subsequent. *See* D.I. 39, Confirmation Hr. Tr. 81:10-11 (Debtors' counsel stating: "We have the authority, we've already decided.") The Debtors' contention that the Specified Caliber Contracts are being assumed or rejected pursuant to a plan in accordance with Bankruptcy Code section 1123 rings hollow because the Toggle Provision is not self-implementing; instead, the Debtors would have the option of "toggling" in favor of assumption if, for example, future market conditions dictate that choice. The Bankruptcy Code does not grant a debtor this

14

type of optionality, nor does it permit a debtor to defer assumption and rejection decisions in this manner, at the expense of contract counterparties.  There is simply no limiting principle to the Debtors' "decision" to assume the Specified Caliber Contracts.  If the Toggle Provision is condoned as an acceptable practice under the Bankruptcy Code, there is nothing preventing the next chapter 11 debtor from rejecting an executory contract subject to additional time-periods or numerous conditions subsequent, which conditions a debtor can waive at will.  If at any time market conditions improve or the Debtors believe they have gained sufficient leverage over Caliber, they can simply elect to assume the Specified Caliber Contracts by ceasing to litigate in the North Dakota Action.

The only support put forth by the Debtors in support of the legality of the Toggle Provision were three outlier,[2] non-binding cases that are rare exceptions wherein bankruptcy courts permitted brief post-confirmation extensions of time to address short-term issues that would not materially impact the affected contract counterparties' statutory rights.  *See* D.I. 39, Confirmation Hr. Tr. 84:11-19 (citing *In re Simplot*, 2007 WL 2479664, No. 06-00002 (Bankr. D. Idaho Aug. 28, 2007), *aff'd*, *DJS Props., L.P. v. Simplot*, 397 B.R. 493 (D. Idaho 2008) (hereinafter,

---

[2]     The Bankruptcy Court recognized as much, stating that "the three cases the debtor cites are not directly on point, factually," even if they stand for the proposition that there are exceptions to the general rule against assumption/rejection decisions post-confirmation.  *See* D.I. 39, Confirmation Hr. Tr. 102:3-6.

WEIL:\96192392\9\32813.0003

"*Simplot*"); *Alberts v. Humana Health Plan, Inc. (Greater Se. Cmty. Hosp. Corp. I)*, 327 B.R. 26 (Bankr. D.D.C. 2005) (hereinafter, "*Alberts*"); and *In re Gunter Hotel Assocs.*, 96 B.R. 696 (Bankr. W.D. Tex. 1988) (hereinafter, "*Gunter*")).

*Simplot* was a family partnership case involving the issue of whether a contract was executory, and thus capable of assumption or rejection under section 365 of the Bankruptcy Code, was not raised until the end of the case. 397 B.R. at 496. As a result, the court confirmed a chapter 11 plan that permitted the debtor to commence an adversary proceeding within 60 days of the plan's effective date to litigate the limited issue of whether the contract was executory. 2007 WL 2479664, at *16. If the court found the contract was executory, the debtor would either assume or reject the contract within 60 days after such determination. *Id.* The facts in *Simplot* stand in stark contrast to this case where the executory nature of the Specified Caliber Contracts was never at issue and 60 days have already passed post confirmation without resolution of any of the conditions subsequent in the Toggle Provision.

In *Alberts*, a conflict arose between the debtors, who sought to assume a contract with Humana, and a trustee of a liquidating trust established under the debtors' confirmed chapter 11 plan, who held the right to prosecute a preference claim against Humana. 327 B.R. at 28. Under those circumstances, any recoveries from a preference action would have to be repaid to Humana as a cure to an

16

assumed contract. The liquidating trustee contested the deemed assumption of contracts within 60 days of plan confirmation, subject only to a retained right of rejection based on a determination of the applicable cure amount. *Id.* at 34. The bankruptcy court, interpreting the terms of a plan it had already confirmed, held that the conditional assumption of executory contracts in the plan was binding. *Id.* at 32.

Even if permissible under the Bankruptcy Code, a 60-day assumption/rejection extension in the *Alberts* plan is limited and concrete, as opposed to the unprecedented Toggle Provision, which conditions a deemed assumption/rejection on a final determination in the North Dakota Action *and then* a final determination of Caliber's rejection damages by the Bankruptcy Court. Requiring both issues to be resolved will result in a substantially longer delay — potentially years — before a final determination regarding the treatment of the Specified Caliber Contracts is reached.

Finally, the court in *Gunter*, relying on Federal Rule of Bankruptcy Procedure 9006, *sua sponte* enlarged the time during which a debtor hotel could assume or reject a licensing agreement by 60 days after the effective date of confirmation of the plan so that the debtor could negotiate and implement a replacement license agreement. *See Gunter*, 96 B.R. at 698. The court justified the holding, at least in part, because the feasibility of the debtor's plan and the

debtors' ability to reorganize would have been placed at risk if it was forced to immediately reject the contract. *Id.* at 698. Here, however, the Debtors have admitted that assumption or rejection of the Specified Caliber Contracts did not impact the feasibility of the Amended Plan. *Gunter* is also distinguishable in that the *Gunter* court did not grant the debtors there an unknown extension of the time to assume or reject the contract in question, as the Bankruptcy Court here did with the Specified Caliber Contracts.

To be clear, the Bankruptcy Code expressly requires a debtor to elect whether to assume or reject an executory contract on or prior to plan confirmation, and there is nothing in the Code granting unfettered extensions of such time. 11 U.S.C. § 365(d)(2). Each of these cases, wherein Courts granted short extensions, involved situations in which the debtors' plans of reorganization depended upon well-defined and short-term decisions that affected the feasibility of their desired plans of reorganization. Resolution of the contested issue was reasonably expected to take place in short order post-confirmation (*i.e.*, 60 days) and the bankruptcy courts attempted to fashion a short-term solution. In stark contrast to those rulings, the Bankruptcy Court went where no court had gone before, and granted the Debtors an open-ended option to assume or reject the Specified Caliber Contracts.

Even if this Court were to adopt the reasoning that a bankruptcy court may authorize a limited post-confirmation period for the assumption or rejection of an

executory contract, there is no statutory or case law support allowing for the Debtors' post-confirmation indeterminate extension of time to assume or reject an executory contract conditioned on a contrived set of contingencies. *See* D.I. 39, Confirmation Hr. Tr. 24:15-25:23 (Debtors' Chief Restructuring Officer testifying the $75 million cap was negotiated with noteholders and represents an amount that would not unduly dilute the noteholders' equity recovery under the Plan); 100:20-25 (describing market out at $75 million). Nor is this the appropriate set of circumstances to allow for such a device given the Debtors' concession that they could operate successfully even without rejecting the Specified Caliber Contracts. *See* D.I. 15, Second Amended Disclosure Statement at 84 (stating that "the Debtors believe the Plan would be feasible even if the Specified Caliber Contracts were assumed (as the Financial Projections illustrate)").

### B. *The Toggle Provision Makes for Bad Bankruptcy Policy*

The Toggle Provision also controverts sound bankruptcy policy. Rather than complying with the strictures of the Bankruptcy Code to make an assumption/rejection decision prior to plan confirmation, thereby providing all parties — particularly the impacted contract counterparty — with certainty as to their treatment, future debtors will manufacture toggles to obtain options to wait out market conditions to decide what to do with executory contracts and unexpired leases while their contractual counterparties are bound by law to continue

performing.  Indeed, the Bankruptcy Court recognized that approving the Plan with the Toggle Provision would leave the door "open" to these types of scenarios.  *See* D.I. 39, Confirmation Hr. Tr. 102:12-14; 102:20-21 (court recognizing "or they're going to say, in two years, that's our condition.").

In addition to the unwarranted optionality that sanctioning of the Toggle Provision will provide future debtors, it will also permit debtors to avoid the requirements of section 365 — which requires a demonstration that the debtor has appropriately exercised its sound business judgment in making an assumption or rejection decision — by simply "providing for" assumption or rejection in their plans under section 1123(b)(2).  But court oversight over a debtor's decision to assume or reject an executory contract is one of the "limits" (in addition to the temporal one discussed above) over the "powerful tool" of section 365.  *See In re Dehon, Inc.*, 352 B.R. 546, 559 (Bankr. D. Mass. 2006).  As such, "although the business decision is largely within the debtor's discretion, only the court can approve the debtor's proposed assumption." *Id*. at 560 (citing 11 U.S.C. § 365(a)). Moreover, "strict adherence to the requirement for court approval before a rejection or assumption will be effective is not mere form: 'Congress enacted section 365(a) as part of the Bankruptcy Code of 1978, making court approval of [executory contract rejection or assumption] obligatory for the first time.'" *Id*. (quoting *In re Thinking Machs. Corp.*, 67 F.3d 1021, 1026–27 (1st Cir. 1995)).

WEIL:\96192392\9\32813.0003

The Bankruptcy Code is silent on how to address the numerous unanswered questions and potential unintended consequences of allowing a post-effective date indeterminate extension of time to assume or reject the Specified Caliber Contracts.   The reason is simple:  a debtor is supposed to make a decision on assumption or rejection prior to plan confirmation and is not supposed to have a prolonged post-effective date period of time to make such determinations so that the debtor, contract counterparties, and parties in interest have clarity on a chapter 11 plan and reorganized debtors' operations.[3]  Accordingly, the Bankruptcy Court erred in confirming the Plan.

## CONCLUSION

For the foregoing reasons, the Confirmation Order of the Bankruptcy Court should be reversed as it relates to Section 6.03 of the Plan and the Debtor Releases.

Dated: July 14, 2017
        Wilmington, Delaware

                          /s/         Daniel B. Butz
                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                          Robert J. Dehney (No. 3578)
                          Curtis S. Miller (No. 4583)
                          Daniel B. Butz (No. 4227)
                          1201 North Market Street, 16th Floor
                          Wilmington, DE 19899

---

[3]     The Bankruptcy Court also placed undue weight on the fact that the Debtors would continue to pay for services rendered under the Specified Caliber Contracts pending resolution of the litigation with Caliber.  *See* D.I.  39, Confirmation Hr. Tr. 113:17-19.  Indeed, the Debtors had no choice but to pay Caliber for post-effective date services requested under the Specified Caliber Contracts.

WEIL:\96192392\9\32813.0003

Telephone: (302) 658-9200
Facsimile:  (302) 425-4673

-and-

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez
Christopher M. Lopez
700 Louisiana Street, Suite 1700
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511

Attorneys for Caliber Midstream Partners, L.P.,
Caliber North Dakota LLC, Caliber Measurement
Services LLC, and Caliber Midstream Fresh Water
Partners LLC

WEIL:\96192392\9\32813.0003